# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

Nº 11-CV-0138 (JFB) (WDW)

---

ANTHONY PENDLETON,

Plaintiff,

VERSUS

GLENN S. GOORD, ET AL.,

Defendants.

---

**MEMORANDUM AND ORDER**
March 27, 2012

---

JOSEPH F. BIANCO, District Judge:

Plaintiff Anthony Pendleton ("plaintiff") brings this action, pursuant to 42 U.S.C. § 1983 ("§ 1983"), seeking money damages[1] against defendants Glenn S. Goord ("Goord") and Brian Fisher ("Fisher"), as Commissioners of the Department of Correctional Services for the State of New York ("DOCS"), Anthony Annucci ("Annucci"), as the Deputy Commissioner of the Department of Correctional Services for the State of New York, and Ronald Merier ("Merier"), an employee of the Division of Parole, alleging that defendants wrongfully detained plaintiff on two occasions for violations of a term of post-release supervision ("PRS") that was unlawfully imposed by DOCS, in violation of his constitutional rights.[2] In particular, plaintiff contends that his PRS term was administratively imposed by DOCS in violation of the Due Process Clause of the United States Constitution. Plaintiff was subsequently arrested for violations while serving his PRS sentence – once in 2007 and once in 2008 – and was incarcerated for approximately one month for the first violation and approximately twenty-six months for the second violation. Plaintiff asserts § 1983 claims for these periods of incarceration and contends that he should not have been sentenced to any term of PRS,

[1] Plaintiff seeks compensatory damages of $200 million against each defendant and an additional $500,000 for pain and suffering.

[2] As discussed *infra*, plaintiff sues defendants only in their personal and individual capacities, and not in their official capacities.

since the judge did not impose PRS at plaintiff's sentencing in 2001.

Defendants now move to dismiss the § 1983 claims against them on the grounds that the action is barred by the statute of limitations and that the defendants are entitled to qualified immunity. For the reasons set forth below, defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is granted on the grounds of qualified immunity.

Defendants are entitled to qualified immunity for any conduct with respect to the plaintiff's September 2007 arrest and incarceration for violation of the terms of his PRS. It was objectively reasonable for the defendants to believe, given the murky legal landscape that followed *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), that they were not violating plaintiff's rights in September 2007 by continuing to enforce his term of PRS.

With respect to plaintiff's February 2008 arrest for violating the terms of his PRS, the Court concludes that plaintiff's constitutional rights were not violated because he had been resentenced by a judge on January 10, 2008, rectifying any potential constitutional violations caused by the formerly administratively-imposed PRS.[3]

## I. Background

### A. Factual Background

The following facts are taken from the complaint ("Compl."), as well as several exhibits attached to the defendants' moving papers.[4] These facts are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

Plaintiff was sentenced by Judge Anthony R. Corso on January 5, 2001 in County Court,

---

[3] Even if the plaintiff's resentencing did not eliminate a violation of plaintiff's constitutional rights, defendants would be entitled to qualified immunity for the same reasons that apply with respect to plaintiff's September 2007 arrest.

[4] With respect to the exhibits submitted by defendants, the Court takes judicial notice of the underlying state court sentence that was the basis of plaintiff's PRS term, as well as the administrative documentation of plaintiff's custody and release from DOCS. *See, e.g.*, *Holloway v. McFarland*, Civil No. 07-2032 (AET), 2007 WL 3376683, at *1 n.1 (D.N.J. Nov. 13, 2007) ("Because Plaintiff's confinement status is available publicly on the DOC website, the Court takes judicial notice of the fact that Plaintiff was released from the custody of the DOC on August 9, 2007."); *Johnson v. Cnty. of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006) (noting that a court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." (internal quotation and citation omitted)); *Washington v. U.S. Tennis Ass'n*, 290 F. Supp. 2d 323, 326 (E.D.N.Y. 2003) (stating that a court is "permitted to take judicial notice of court documents from previous actions"); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 508 n.16 (S.D.N.Y. 2006) (noting that "the Court properly can take judicial notice of the filings and [an] Order in the Connecticut state court action" (citing *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) ("[F]ederal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue."))); *Hill v. Goord*, 63 F. Supp. 2d 254, 256 (E.D.N.Y. 1999) ("Federal Rule of Evidence 201(b) provides that '[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.' In the Court's view, the Orders and documents related to Hill's related state case and parole hearings are capable of determination by sources whose accuracy cannot reasonably be questioned.").

Suffolk County to a determinate prison term of seven years for attempted sodomy in the first degree, pursuant to Penal Law § 130.50. (Compl., Ex. A; Pack Declaration ("Pack Decl."), Ex. 1). He was received into the custody of DOCS on January 17, 2001. (Pack Decl., Ex. 1). On June 23, 2006, plaintiff was released from custody and began serving his 5-year term of PRS. (Pack Decl., Ex. 2).

Plaintiff claims that defendants enforced a period of PRS against him even though he was not sentenced by a judge to a period of PRS. (Compl. ¶¶ Prelim. Statement, 9.) Plaintiff alleges that Goord and Annucci created and enforced the policy and practice under which DOCS employees imposed the PRS term against plaintiff. (*Id.* ¶¶ 3, 4.) Plaintiff also alleges that Merier, who was "[r]esponsible for the [p]reparation of the Plaintiff[']s release . . . [a]ssumed the [r]ole [o]f the Judiciary" by typing the PRS provision onto plaintiff's release paper. (*Id.* ¶ 5.)

Subsequent to his release from DOCS' custody on June 23, 2006, plaintiff was incarcerated on September 19, 2007 for a violation of the terms of his PRS. (Pack Decl., Ex. 2, 3.) On January 10, 2008, while plaintiff was incarcerated, he was resentenced by County Court Judge Barbara Kahn to a seven-year determinate prison term and five years post-release supervision, nunc pro tunc. (Pack Decl., Ex. 4.) Plaintiff was released from the custody of DOCS by January 15, 2008. (Pack Decl., Ex. 1.)

Plaintiff again violated the terms of his parole on February 27, 2008. (Pack Decl., Ex. 5.) He pled guilty on the parole violation at a final parole revocation hearing on March 25, 2008, and was returned to DOCS as a PRS violator to be held to the maximum expiration date of his sentence. (Pack Decl., Exs. 5, 6.) On April 5, 2010, plaintiff was released from DOCS custody. (*See* Compl. ¶ 11.) On April 12, 2010, an amended commitment order was issued vacating the PRS part of plaintiff's sentence. (Pack Decl., Ex. 7.)

B. Legal History[5]

In 1998, the New York legislature enacted Penal Law 70.45, also known as Jenna's Law, which required that with the imposition of a determinate term of incarceration, a period of PRS must also be included.

On June 9, 2006, the Second Circuit held in *Earley v. Murray* that the administrative imposition of a five-year PRS term by DOCS, pursuant to New York Penal Law § 70.45, was unconstitutional. *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006), *writ of habeas corpus granted by* No. 03-CV-3104 (ERK), 2007 U.S. Dist. LEXIS 31942 (E.D.N.Y. May 1, 2007), *cert. denied Burhlre v. Earley*, 551 U.S. 1159 (2007).

On April 29, 2008, in *People v. Sparber*, 10 N.Y.3d 457, 889 N.E.2d 459, 859 N.Y.S.2d 582 (2008), the New York Court of Appeals also held that the administrative imposition of a PRS term was invalid, but on different grounds. In *Sparber*, the Court of Appeals held that the failure of a sentencing court to orally pronounce a term of PRS rendered that part of the sentence invalid

[5] In *Ruffins v. Dep't of Corr. Servs.*, 701 F. Supp. 2d 385 (E.D.N.Y. 2010), this Court explained in detail the relevant legal history under New York State law, as it pertains to this PRS issue. Familiarity with *Ruffins* is assumed and is incorporated by reference herein. Thus, the Court only briefly summarizes *infra*, in this section, the development of the law in New York State on this issue.

because it did not comport with state law. *See id*. at 470-71.

In *Garner v. N.Y. State Department of Correctional Services*, a case issued by the Court of Appeals on the same day as *Sparber*, the court held that a writ of prohibition barring DOCS from adding a mandatory period of PRS could issue because, pursuant to CPL 380.20 and 380.40, only the sentencing judge is authorized to pronounce the PRS component of a sentence. 889 N.E.2d 467 (N.Y. 2008). Thus, any such administratively added PRS term was an act by DOCS in excess of its jurisdiction, since the "CPL's express mandate [is] that sentencing is a judicial function[.]" *Id.* at 470. *Garner* did not expressly pass on the constitutional arguments before it or on the applicability of the Second Circuit's opinion in *Earley v. Murray*, instead resting its decision on statutory grounds. *See id.*

In response to the *Garner* and *Sparber* decisions, the New York legislature passed Correction Law § 601-d, which created a procedure by which improperly sentenced defendants could be identified and resentenced. That law became effective June 30, 2008.

### C. Procedural History

Plaintiff filed this action on January 10, 2011. Defendants filed the instant motion on May 11, 2011. Plaintiff submitted his opposition on June 13, 2011. Defendants submitted their reply on June 21, 2011. Plaintiff submitted a sur-reply on August 15, 2011. The Court has fully considered all of the parties' submissions.

## II. Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Where, as here, the plaintiff is proceeding *pro se*, "[c]ourts are obligated to construe the [plaintiff's] pleadings . . . liberally." *McCluskey v. New York State Unified Ct. Sys.*,

No. 10-CV-2144 (JFB)(ETB), 2010 WL 2558624, at *2 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008)); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). A *pro se* plaintiff's complaint, while liberally interpreted, still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (citing *Iqbal*, 129 S.Ct. at 1949); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom.*, *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

## III. Discussion

Plaintiff asserts a cause of action pursuant to § 1983 based upon the alleged violation of his rights under the Fourteenth Amendment to the United States Constitution. Specifically, plaintiff alleges that his constitutional rights were violated by the defendants, including the individual defendants in their individual capacities, when they wrongfully imposed the PRS term and then twice incarcerated him, once in 2007 and once in 2008, for violations thereof.

Under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges or immunities secured by the Constitution and federal law, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself provide substantive rights but in fact offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985))).

Here, defendants do not argue that they did not act under color of state law. Instead, defendants move to dismiss the § 1983 claims on the following grounds: (1) plaintiff's claims are barred by the statute of limitations; and (2) defendants are entitled to qualified immunity for their actions.

A. Statute of Limitations

As a threshold matter, defendants argue that plaintiff's claims are barred by the statute of limitations. As set forth below, the Court disagrees.

For § 1983 actions in New York, the statute of limitations is three years. *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994); *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995). The limitations period begins to run, or accrue, "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearls v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (internal quotation marks and citation omitted); *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994).

Because plaintiff's claims are based upon the alleged unlawful imposition of the PRS term by DOCS employees instead of by a sentencing court, the date that plaintiff's original sentence was invalidated marks the date of accrual. *See Ruffins*, 701 F. Supp. 2d at 395 ("Importantly, the Supreme Court expressly stated in *Heck* that a plaintiff's § 1983 claim does not accrue until the underlying sentence or conviction is invalidated; thus, in this case, plaintiff's § 1983 cause of action did not accrue until [the date] when the state court re-sentenced him without any PRS term.").

In this case, the plaintiff was resentenced on January 10, 2008 by Judge Kahn. (Pack Decl., Ex. 4.) The plaintiff's commitment order was signed by the Clerk of the Court on January 15, 2008. (Pack Decl., Ex. 4.) Defendants argue that the statute of limitations began to run on January 10, 2008, whereas plaintiff contends that the limitations period began on January 15, 2008. Because plaintiff filed his complaint on January 10, 2008, it is unnecessary to address whether the January 10, 2008 resentencing or the January 15, 2008 signing of the amended commitment order started the clock for statute of limitation purposes. In either case, plaintiff filed his complaint within the three year statute of limitations.

Defendants argue that the statute of limitations bars the plaintiff from commencing this action because plaintiff "commenced [the action] on March 11, 2011." (Defs.' Mem. of Law at 2.) In fact, plaintiff filed his complaint on January 10, 2011, but the summons did not issue until March 11, 2011 because the plaintiff failed to provide the defendants' addresses when he filed the complaint.

When the plaintiff filed his complaint on January 10, 2008, he also filed a motion for leave to proceed *in forma pauperis* ("IFP"). Such a motion enables a plaintiff to proceed without paying fees or costs if he demonstrates that his income and assets fall below a certain qualifying amount. *See* 28 U.S.C. § 1915. If the Court grants the plaintiff IFP status, the U.S. Marshal Service bears responsibility for serving the complaint upon defendants.

Here, the Court granted plaintiff IFP status on February 18, 2011. The Order directed the U.S. Marshal Service to serve the complaint upon the defendants without prepayment of fees. On March 1, 2011, the *Pro Se* Office in the Eastern District of New York sent plaintiff a letter requesting that he provide defendants' addresses in order to allow the Marshals to effect service. Plaintiff responded by letter dated March 4, 2011 with defendants' addresses. Plaintiff's letter was filed March 8, 2011, and a summons was issued as to the defendants on March 11, 2011. That same day, the documents were forwarded to the

Marshals for service. Fisher was served on March 22, 2011, and Annuci, Goord, and Merier were served on March 29, 2011. The summons was returned executed on April 7, 2011.

Although the Second Circuit has never addressed this exact issue, other circuits have concluded that an IFP plaintiff should not be punished for any delay in the issuance of process if he filed the complaint in a timely manner, with a request for leave to proceed IFP. This Court finds the reasoning of these decisions to be persuasive. *See, e.g.*, *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010). Accordingly, this Court holds that the statute of limitations for a *pro se* plaintiff's claim is tolled during the pendency of an accompanying motion to proceed *in forma pauperis* under 28 U.S.C. § 1915, as well as the period of time necessary for the United States Marshal's Service to effectuate service if the motion is granted. As the Fourth Circuit noted, "*In forma pauperis* plaintiffs must rely on the district court and the U.S. Marshals Service to effect service of process according to 28 U.S.C. § 1915. Therefore, an *in forma pauperis* plaintiff should not be penalized for a delay caused by the court's consideration of his complaint. That delay 'is solely within the control of the district court.'" *Robinson*, 602 F.3d at 608 (quoting *Paulk v. Dep't of Air Force, Chanute Air Force Base*, 830 F.2d 79, 83 (7th Cir. 1987)) (internal citations omitted).[6]

In this case, plaintiff's IFP motion was not granted until February 18, 2011. On March 1, 2011, the Court's *Pro Se* Office sent a letter to the plaintiff directing him to provide the defendants' addresses, and the plaintiff responded promptly by letter dated March 4, 2011 and filed March 8, 2011, enclosing the defendants' addresses. Thus, the delay between the granting of plaintiff's IFP motion on February 18, 2011 and the issuance of the summons on March 11, 2011 was due to the district court's consideration of the complaint in ascertaining that the plaintiff had failed to provide defendants' addresses, as well as the need for the Court to obtain the addresses from plaintiff and then have the United States Marshal's Service effectuate service.

Accordingly, because the complaint was filed within three years of the date of the plaintiff's resentencing, and because the delays in issuing the summons were due to the plaintiff's *pro se* and IFP status, the Court concludes that plaintiff's § 1983 claims are timely.

B. Qualified Immunity

Defendants argue that all of the individual defendants are entitled to dismissal of the § 1983 claims against them on the grounds of qualified immunity. As set forth below, the Court agrees.

As a preliminary matter, qualified immunity is available for officials sued only in their individual and personal capacities. Qualified immunity is not available as a defense for officials sued in their official capacities. *See Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007) ("Immunity,

[6] The Second Circuit's reasoning on similar issues concerning IFP plaintiffs suggests that the Second Circuit would adopt the reasoning of these other circuits with respect to timeliness. *See, e.g.*, *Murray v. Pataki*, 378 F. App'x 50, 52 (2d Cir. 2010) ("A *pro se* prisoner proceeding *in forma pauperis* is . . . entitled to rely on service by the U.S. Marshals." (quotations omitted)); *Romandette v. Weetabix Co.*, 807 F.2d 309, 312 (2d Cir. 1986) (district court erred in dismissing suit, brought by *pro se* litigant proceeding *in forma pauperis*, where U.S. Marshal Service, not litigant, failed to personally serve defendant).

either absolute or qualified, is a personal defense that is available only when officials are sued in their individual capacities; '[t]he immunities [officials] enjoy when sued personally do not extend to instances where they are sued in their official capacities.'" (quoting *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir. 1999))).

According to the caption on the complaint, plaintiff sues defendants "Individually, In their Personal Capacity." (Compl. at 1.) Plaintiff states that Goord "is sued in his Individual capacity, for his failure to Remedy the Wrong against the Plaintiff, for creating a Policy under which an unconstitutional act occurred, and allowed continuance of the Action." (*Id.* ¶ 3.) Annucci is "Sued in his Individual capacity for Similar Reasons as" Goord. (*Id.* ¶ 4.) Merier is "Sued in His Individual Capacity Because He Knew or should have Known that his Actions Could Not be Enforced." (*Id.* ¶ 5.) Further, plaintiff emphasizes in his Opposition to the Defendants' Motion to Dismiss ("Plaintiff's Opp.") that he "is Not suing the States, the D.O.C.S., nor anyone in their official capacities. Each and Every defendant in the Initial complaint are being sued individually, in there [sic] personal capacities." (Plaintiff's Opp. at 3.[7]) Thus, the Court will consider all of defendants' actions as actions performed only in their personal and individual capacities, and will therefore analyze whether defendants were protected by qualified immunity.

As set forth below, the Court finds that defendants are entitled to qualified immunity for administratively imposing PRS on the plaintiff in June 2006 and for arresting plaintiff in September 2007 because these actions took place after the *Earley* decision but before the *Sparber*/*Garner* decisions. Moreover, defendants are not liable for plaintiff's February 2008 arrest because it took place after the plaintiff had been resentenced. In other words, since the administratively-imposed PRS term was removed at resentencing on January 10, 2008, no Section 1983 claim can exist as a matter of law on the February 2008 arrest based upon the administratively-imposed PRS term. In any event, the defendants also would be entitled to qualified immunity as to the February 2008 arrest.

1. Legal Standard

Government actors may be shielded from liability for civil damages by qualified immunity, i.e., if their "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003); *see also Fielding v. Tollaksen*, 257 F. App'x 400, 401 (2d Cir. 2007) ("The police officers, in turn, are protected by qualified immunity if their actions do not violate clearly established law, or it was objectively reasonable for them to believe that their actions did not violate the law."). As the Second Circuit has also noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)). Thus, qualified immunity, just like absolute immunity, is not merely a defense, but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*,

[7] Because plaintiff's opposition does not contain page numbers, the ECF pagination is given.

472 U.S. 511, 526 (1985). Accordingly, the availability of qualified immunity should similarly be decided by a court "[a]t the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Nonetheless, the Second Circuit has emphasized that "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see also McCray v. City of New York*, Nos. 03-CV-9685 (DAB), 03-CV-9974 (DAB), 03-CV-10080 (DAB), 2007 WL 4352748, at *18, 2007 U.S. Dist. LEXIS 90875, at *66 (S.D.N.Y. Dec. 11, 2007) ("A defendant asserting a qualified immunity defense at the 12(b)(6) stage . . . faces a formidable hurdle. Because the evidence supporting a finding of qualified immunity is normally adduced during the discovery process and at trial, the defense of qualified immunity [usually] cannot support the grant of a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim upon which relief can be granted." (internal citations and quotation marks omitted)). In particular, the facts supporting the defense must be clear from the face of the complaint. In addition, in such situations, "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.

2. Application

"A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established *at the time of the conduct at issue*." *See Davis v. Scherer*, 468 U.S. 183, 197 (1984) (emphasis added).

Plaintiff was initially sentenced to a determinate term of seven years on January 5, 2001. At that time, the sentencing court did not advise plaintiff of any PRS term. However, pursuant to New York Penal Law § 70.45, plaintiff was required to serve a term of PRS. *See* N.Y. Penal Law § 70.45. It is not clear from the complaint or the moving papers whether the plaintiff's five-year PSR term was administratively imposed at the time of his sentencing in 2001 as a consequence of the operation of § 70.45, or if it was administratively imposed on June 21, 2006, when Merier signed the plaintiff's Certificate of Release to Parole Supervision (which stated that plaintiff would be "placed under legal jurisdiction of the Division of Parole until" June 23, 2011). (Pack Decl. Ex. 2.) In his complaint, plaintiff seems to challenge only the June 21, 2006 imposition of the PRS term. For example, the complaint references the date defendants *enforced* the PRS, (Compl. at 1), and describes Merier's entry of the PRS, (*Id.* ¶ 5). The complaint does not seek damages for any period prior to June 23, 2006. (*Id.* ¶ 11.)

The timing of the imposition of the PRS is relevant in determining whether the plaintiff's constitutional rights were clearly established. If the plaintiff contends that the PRS term was imposed at his sentencing in 2001, the question is whether the plaintiff's right to have his sentence imposed by a court was clearly established *five years before* the Second Circuit decided *Earley* in 2006. If, however, the plaintiff contends that the PRS term was imposed when his conditional release was signed on June 21, 2006, the question is whether the plaintiff's right to have his sentence imposed by a court was clearly established *two weeks after Earley*.

Because the complaint seems to challenge only the June 21, 2006 imposition of the PRS term, and because the Court construes the complaint most favorably to plaintiff, the Court will assume that the plaintiff's sentence was administratively imposed on June 21, 2006.

In addition to challenging the administrative imposition of the PRS, plaintiff seeks to hold defendants liable for arresting and reincarcerating him for parole violations on September 19, 2007,[8] and on February 27, 2008.[9]

All of defendants' actions occurred after *Earley*, but before *Garner/Sparber*. Thus, the Court will analyze only whether qualified immunity protected defendants in the time between these decisions. Defendants argue that the Second Circuit's decision in *Earley* did not clearly establish, for the purposes of qualified immunity, that the administrative imposition of a period of PRS violated a constitutional right. The Court agrees and, thus, the defendants are entitled to qualified immunity for their actions during the post-*Earley*, pre-*Sparber*/*Garner* period.

As set forth in the legal standard for qualified immunity discussed *supra*, defendants are entitled to qualified immunity if it was objectively reasonable for them to believe that their actions did not violate plaintiff's constitutional rights. Despite the clarity of *Earley* in holding that the only sentence legally imposed is that which is pronounced by a judge, the Court concludes that it was objectively reasonable for all DOCS and NYS Parole officials to believe, prior to *Sparber* and *Garner*, that continued enforcement of an administratively imposed period of PRS (pending guidance on an appropriate remedy) was not in violation of a prisoner's constitutional rights. This Court reached that conclusion in *Ruffins* and that analysis applies fully to this case. *See Ruffins*, 703 F. Supp. 2d at 404-08.

This Court's determination that defendants are entitled to qualified immunity for conduct that occurred post-*Earley* and before the *Sparber* and *Garner* cases in April 2008 is consistent with numerous other courts in this Circuit who have reached the same conclusion. *See Locantore v. Hunt*, 775 F. Supp. 2d 680, 687 (S.D.N.Y. 2011) ("the overwhelming consensus within the Second Circuit is that the protection of qualified immunity applied until April 2008, when the New York Court of Appeals resolved a split among the lower state courts and invalidated the administrative imposition of PRS . . . Until then, the courts have uniformly held, it would have been reasonable for Parole and DOC officials not to have understood fully the constitutional problems created by imposition of PRS in such a manner." (internal citation omitted)) (collecting cases); *Vincent v. Yelich*, Nos. 08-CV-6570L, 09-CV-6323L, 2011 WL 3800035, at *3 (W.D.N.Y. Aug. 29, 2011) ("Hindsight is always 20/20. Although the unconstitutionality and/or unlawfulness of the defendants' practice of administratively mandating PRS may be clear today, it was manifestly not so prior to April 2008, when New York state appellate courts remained split as to *Earley*'s import and scope, and had identified numerous well-seeming ways to distinguish it."); *Albergottie v. New York City*, No. 08 Civ. 8331 (SHS), 2011 WL 519296, at *6 (S.D.N.Y. Feb. 15, 2011) (holding that

[8] Plaintiff was reincarcerated until January 2008 after this arrest. (Pack Decl. Ex. 4.)

[9] Plaintiff pled guilty to the parole violation at a final parole revocation hearing on March 25, 2008. (Pack Decl. Ex. 5.) As a PRS violator, he was returned to DOCS custody.

defendants are entitled to qualified immunity until June 30, 2008 – the date on which the New York state legislature passed Correction Law § 601-d – because until then "a reasonable State DOCS or parole official would not realize that he had a duty or authority to seek the correction of a procedurally deficient but otherwise valid and statutorily required period of PRS"); *Robinson v. Fischer*, No. 09 Civ. 8882 (LAK)(AJP), 2010 WL 5376204, at *9 (S.D.N.Y. Dec. 29, 2010) (holding that defendants "are entitled to qualified immunity for any actions they may have taken to enforce [plaintiff's] PRS following *Earley* but prior to the New York Court of Appeals' decisions in *Garner* and *Sparber*); *Smith v. Paterson*, No. 08 Civ. 3313 (SHS), 2010 WL 4359225, at *2 (S.D.N.Y. Nov. 3, 2010) ("the unlawfulness of administratively imposed PRS was not clearly established from the standpoint of a reasonable DOCS officer in the period after *Earley* and before the New York Court of Appeals' decisions in *Garner* and *Sparber*"); *Hardy v. Fischer*, No. 08 Civ. 2460, 2010 WL 4359229, at *3 (S.D.N.Y. Nov. 3, 2010) (same); *Baker v. City of New York*, No. 09 CV 10604 (HB), 2010 WL 4273269 at *5 (S.D.N.Y. Oct. 29, 2010) (at the time of plaintiff's arrest in 2007, "it was objectively reasonable for [d]efendants to believe that [p]laintiff's administratively imposed PRS was constitutional"); *Rodriguez v. Fischer*, No. 08-CV-4662 (SJF)(MLO), 2010 WL 438421, at *6 (E.D.N.Y. Feb. 3, 2010) ("Since New York courts were in disagreement regarding the propriety of administratively imposed PRS at the time of Plaintiff's post *Earley* arrests and confinements, and absent contrary direction, state officials . . . are entitled to rely on a presumptively valid state statute, [d]efendants are entitled to qualified immunity" (internal quotation marks and citations omitted)); *see also Scott v. Fischer*, 616 F.3d 100, 107-08 (2d Cir. 2010) (holding that administrative imposition of PRS was not clearly established pre-*Earley*, and suggesting that qualified immunity would cover some of the post-*Earley* period as well); *Rivers v. Fischer*, 390 F. App'x 22, 24 (2d Cir. 2010) ("Even after *Earley*, however, it was not clearly established that [plaintiff] had the right to be immediately released from custody.").

Thus, from the time that the Second Circuit issued its opinion in *Earley* in June 2006 until the New York Court of Appeals issued its opinions in the *Sparber* and *Garner* cases on April 29, 2008, it was not clearly established that DOCS could not enforce the terms of plaintiff's PRS. Accordingly, it was objectively reasonable for defendants to have administratively imposed the PRS term on plaintiff on June 21, 2006, and for defendants to have arrested plaintiff for violations of the terms of his PRS on September 19, 2007 and on February 27, 2008. Thus, the defendants are entitled to qualified immunity for these actions.

Furthermore, although defendants are protected by qualified immunity for their actions in arresting plaintiff on February 27, 2008 and returning him to DOCS as a PRS violator on April 16, 2008, these actions unquestionably did not violate plaintiff's constitutional rights because plaintiff's 2001 sentence had already been invalidated by Judge Kahn on January 10, 2008. Judge Kahn resentenced plaintiff on that date to seven years and five years PRS, nunc pro tunc, satisfying plaintiff's constitutional rights. Thus, any alleged violation of plaintiff's constitutional rights regarding the administratively imposed PRS term ceased to exist after January 10, 2008, and no constitutional claim can exist as a matter of law after that date.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss plaintiff's § 1983 claims for alleged unconstitutional conduct in connection with the administrative imposition of plaintiff's PRS term and in connection with plaintiff's arrest and incarceration for a PRS violation in 2007 prior to the decisions in *Sparber* and *Garner*, as well as his arrest on February 27, 2008 and subsequent parole revocation. The Clerk of the Court shall enter judgment accordingly and close the case. The Court certifies, pursuant to 28 U.S.C. § 1915 (a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

______________________

JOSEPH F. BIANCO
United States District Judge

Dated: March 27, 2012
Central Islip, NY

* * *

Plaintiff is proceeding *pro se*, 56 Gordon Avenue, Medford, NY 11763. The attorney for defendants is Lori L. Pack of the Office of the New York State Attorney General, 300 Motor Parkway, Suite 205, Hauppauge, NY 11788.